LOTTINGER, Judge.
This is a suit for interest earned on royalty payments while held in escrow pending litigation between the State of Louisiana, appellant herein, and various third parties. The plaintiffs herein were not parties to these lawsuits. Upon settlement of that litigation, the State received royalty payments of $23,247,802.10 together with accrued interest of $9,474,529.00 in one distribution, and royalty payments of $561,-796.92 together with accrued interest of $180,448.25 in a second distribution.
Pursuant to Article VII, Section 4(E) of the Louisiana Constitution of 1974 [1], and La.R.S. 30:145[2], the State turned over 10 percent of the royalty payments to plaintiffs, the Parish of East Baton Rouge, the Parish of East Feliciana, and the Parish of West Baton Rouge, but did not turn over any of the interest which had accumulated on those funds while they were in escrow.
The Parishes of East Baton Rouge, East Feliciana, and West Baton Rouge filed the instant suit against the Treasurer of the State of Louisiana and the State of Louisiana to recover their share of the interest which had accrued while the royalty payments were held in escrow, together with legal interest from date of judicial demand. The facts were stipulated to and the only issues at trial were whether or not the plaintiffs were entitled to the accumulated interest, and if so whether, judicial interest from date of demand was also owed.
The trial court held in favor of the plaintiffs, awarding them both the accumulated interest plus interest on their portion of the royalties from date of judicial demand. The State has appealed suspensively from this judgment assigning two errors:
1. The trial court erred in awarding the interest earned on the ten percent of the state royalty payments remitted to the *480 plaintiffs-appellees pursuant to Article VII, Section 4(E).
2. The trial court erred in awarding plaintiffs-appellees legal interest on the interest awarded them despite the prohibition of Civil Code Article 2001.
ASSIGNMENT OF ERROR NO. 1
The State contends in its first assignment of error that it does not owe the accumulated interest because Article VII, Section 4(E) of the Constitution provides only that 10 percent of royalties are to be turned over to the Parish in which severance or production occurs, and does not mention interest. The State further contends that until it remits 10 percent of the royalties to the proper parish, the State owns those royalties as they come from minerals under State owned lands, and therefore any interest accruing thereto belongs to the State.
While we are inclined to agree that the State is not constitutionally required to turn over a corresponding percentage of the interest which has accumulated on royalties it owns when it remits the constitutionally required percentage of those royalties to the parish in which production occurs; this issue is not necessary to the resolution of the instant dispute, and thus we do not so hold. The resolution of the instant dispute turns, we believe, on exactly when the State became the owner of the royalties; and what part of the sums involved constituted royalties, as opposed to interest on those royalties.
In the instant case the royalty payments were not paid directly to the State but were placed in the registry of the court pending adjudication of ownership. Only after reaching a settlement did the parties to the prior litigation obtain a judgment granting to the State a share of the funds, or royalty payments, held in escrow, together with the interest which had accumulated thereon. It is at this point that the State became the owner of the funds in question.
As tq what part of the funds in question are royalties as opposed to interest, La.R.S. 31:213(5) provides an answer. Royalty is defined therein as follows:
“ ‘Royalty,’ as used in connection with mineral leases, means any interest in production, or its value, from or attributable to land subject to a mineral lease, that is deliverable or payable to the lessor or others entitled to share therein. Such interests in production or its value are ‘royalty,’ whether created by the lease or by separate instrument, if they comprise a part of the negotiated agreement resulting in execution of the lease. ‘Royalty’ also includes sums payable to the lessor that are classified by the lease as constructive production.”
The funds obtained by the State pursuant to the consent judgment rendered in the prior litigation.constituted an “interest in production ... attributable to land subject to a mineral lease.... ” La.R.S. 31:213(5). Therefore, the entire amount received by the State pursuant to the settlement of the underlying litigation, including interest earned during the pendency of that litigation, constituted a royalty payment. Pursuant to Art. VII, § 4(E) of the La. Const, of 1974, and La.R.S. 30:145, 10 percent of the entire amount, interest included, should have been paid to the plaintiffs. Accordingly, the State’s first assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
The State next complains that the award of legal interest from date of judicial demand made by the trial court was in violation of La.Civ.Code art. 2001 and thus improper.
Since we have already held that the entire amount paid to the State constituted a royalty payment, the prohibition against paying interest on interest contained in La. Civ.Code art. 2001 has no application to the instant facts. Therefore this assignment of error also lacks merit.
CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed at defendant/appellant’s cost in the amount of $238.61.
AFFIRMED.

. Article VII, Section 4(E) of the Louisiana Constitution of 1974 provides:
"One-tenth of the royalties from mineral leases on state-owned land, lake and river beds and other water bottoms belonging to the state or the title to which is in the public for mineral development shall be remitted to the governing authority of the parish in which severance or production occurs. A parish governing authority may fund these royalties into general obligation bonds of the parish in accordance with law. The provisions of this Paragraph shall not apply to properties comprising the Russell Sage Wildlife and Game Refuge."

. La.R.S. 30:145 provides:
"Effective January 1, 1975, and in accordance with the provisions of Article VII, Section 4(E) of the Louisiana Constitution of 1974, the state treasurer of the state of Louisiana is hereby authorized and directed to remit an amount equal to one-tenth of the royalties accruing to the state in each month from mineral leases on state owned lands, lake and river beds, and other water bottoms belonging to the state or the title to which is in the public for mineral development to the governing authority of the parish in which severance or production occurs. In the calendar year beginning January 1, 1975 and thereafter, the distribution of the aforesaid royalties to the parish shall be made by the state treasurer on the twentieth day after the last day of every third month. Notwithstanding the provisions of the preceding sentences, so long as any bonds issued by a parish payable from a pledge and dedication of moneys deposited in the Royalty Road Fund established by Article IV, Section 2, of the Louisiana Constitution of 1921 (the ‘Royalty Road Fund’) or additional bonds hereafter issued on a parity therewith remain outstanding or until irrevocable provision is made for their payment in principal and interest, the state treasurer, prior to remitting any such royalty payments directly to the parish in any calendar year shall make all payments required for debt servicing by the resolutions or other instruments providing for the issuance of such bonds in that calendar year.”